IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON HARRISON, | No C-04-4880 VRW |
|     Plaintiff | ORDER |
|         v | |
| COMCAST, et al, | |
|     Defendant. | |

Pro se plaintiff Leon Harrison has brought an action for wrongful discharge and related torts against Comcast of California/Colorado/Texas/Washington, Inc (Comcast). Doc #27, Ex 41 (Complaint). Comcast has moved for summary judgment on all claims. Doc #21. For the reasons stated below, Comcast's motion for summary judgment is GRANTED.

//
//

I

Harrison's employment with Comcast began in March 1996. When he was terminated in May 2003, Harrison worked as an Advanced Technician, a position covered by a collective bargaining agreement (CBA) between Comcast and the Communications Workers of America, AFL-CIO (union).  Doc #26 (Perdue Decl) ¶4; id, Ex 1 (CBA).  The CBA was ratified in June 2002 and was in effect at all times relevant to this case.

Comcast asserts that it terminated Harrison for repeatedly violating the company's tools and equipment policy. Perdue Decl, Ex 2-16.  During the last three years of his employment, Harrison allegedly lost a number of company items and received various verbal and written warnings as a result.  Id. Among the company items Harrison reportedly lost were radios, a stealth tracker meter, an amp clamp, a pager, torque wrenches, a gas cap from an assigned vehicle, a cell phone, and a set of system maps.  Id.  Harrison also received warnings and disciplinary actions for a range of misconduct, such as failure to follow outage procedures and unsafe driving practices.  Id, Ex 18-21.  The final incident, resulting in termination, occurred when Harrison allegedly left company equipment worth $25,000 unattended in the company parking lot overnight.  Id, Ex 17.

On June 11, 2003, Harrison filed a complaint with the California Department of Fair Employment and Housing (DFEH), alleging that he had been wrongfully discharged after complaining of race discrimination.  Comcast RJN, Ex 47 (DFEH complaint).  One day later, DFEH issued Harrison a right-to-sue letter, informing him that he could bring a civil action under the Fair Employment

and Housing Act (FEHA) against Comcast "within one year from the date of [the] letter." Id, Ex 48. The letter also instructed Harrison that, in order to request a federal notice of right-to-sue, he must file a complaint with the Equal Employment Opportunity Commission (EEOC) "within 30 days of receipt of [the letter] or within 300 days of the alleged discriminatory act, whichever is earlier." Id.

Harrison also filed a grievance with the union on June 6, 2003, under the procedures set forth by the CBA. Perdue Decl, Ex 22; Ex 1 at Art 8. Yet after advancing through the CBA's four-step process, the union declined to submit his grievance to arbitration. Doc #35 at 4.

On January 26, 2004, Harrison sued Comcast in Alameda county superior court with Melina J Burns as his counsel. Id, Ex 41. On February 25, 2004, Comcast removed the matter to this court. Doc #1 of 04-0788. After Harrison and his attorney failed to appear at a scheduled case management conference (CMC) on July 13, 2004, the court ordered Harrison to show cause why this case should not be dismissed for failure to prosecute pursuant to FRCP 41(b) and why the court should not award defendant expenses related to the July 13, CMC. Doc #14 of 04-0788. Neither Harrison nor his attorney ever responded to this order; hence, the court dismissed the action on August 6, 2004, and ordered plaintiff to pay defendant $665.00 in reasonable expenses incurred for the July 13, CMC. Doc #17 of 04-0788.

On August 19, 2004, Harrison filed an identical complaint against Comcast in Alameda county superior court and Comcast again removed the case to this court on November 16, 2004. Doc #1. On

3

August 5, 2005, Harrison terminated his lawyer and elected to represent himself. Doc #18. On September 26, 2005, Comcast moved for summary judgment. Doc #21. Harrison initially did not file an opposition but rather moved on December 1, 2005, to continue or enlarge time to respond. Doc #30.

On March 7, 2006, the court granted Harrison's motion to enlarge time, in light of the difficulties Harrison had with his former counsel. Doc #34 at 2-3. Nevertheless, the order emphasized that the court would not provide any further extensions in this case. Id at 3.

II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the nonmoving party. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v Liberty Lobby, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. The burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp v Catrett, 477 US 317, 322-23 (1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting the claim

4

that a genuine issue of material fact exists. <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. <u>Thornhill Publishing Co, Inc v GTE Corp</u>, 594 F2d 730, 738 (9th Cir 1979).

### III

Harrison alleges seven claims against Comcast: (1) breach of implied-in-fact promise not to terminate except for cause; (2) breach of oral promise not to terminate except for cause; (3) breach of the implied covenant of good faith and fair dealing; (4) termination in violation of public policy; (5) retaliation; (6) failure to investigate and (7) specific performance. Complaint at 2-6.

### A

As a threshold matter, the court must determine whether section 301 of the Labor Management Relations Act (LMRA), 29 USC § 185(a), preempts any of Harrison's claims. If preempted, such claims would be precluded by the Collective Bargaining Agreement's (CBA) finality provision, which provides that the union's decision not to submit a grievance to arbitration "automatically constitute[s] a waiver of the grievance and bar[s] all further action thereon." CBA at Art 8C(2).

It is undisputed that the union chose not to arbitrate Harrison's case. See Doc #35 at 4; Doc #37 at 5. This decision constitutes the final disposition of Harrison's grievance under the

CBA, and thereby triggers the finality provision. CBA at Art 8C(2); see also <u>McNaughton v Dillingham Corp</u>, 707 F2d 1042, 1046 (9th Cir 1983) (holding that the disposition of an employee's grievance becomes final "at whatever stage of the grievance procedure the union and employer resolve the grievance or terminate further consideration of it").

Moreover, the lone exception to the CBA's finality provision does not apply here. To be exempt, Harrison must demonstrate that the union breached its duty of fair representation. <u>United Parcel Serv, Inc v Mitchell</u>, 451 US 56, 61-62 (1981). Harrison has never alleged, nor does the record indicate, that the union wrongfully refused to arbitrate his claims. Accordingly, Harrison cannot pursue any claims preempted by the LMRA.

The LMRA does not, however, preempt every claim that tangentially involves a provision of the CBA; rather, it only preempts claims that "necessarily require[]" the court to interpret an existing provision of a collective bargaining agreement (CBA) for the resolution of the dispute. <u>Cramer v Consol Freightways, Inc</u>, 255 F3d 683, 693 (9th Cir 2001); see also <u>Lingle v Norge Div of Magic Chef</u>, 486 US 399, 405-06 (1988). Hence, for each claim, the court must determine whether resolving it would require the court to interpret the CBA between Harrison and Comcast.

//
//
//
//
//

6

**B**

Applying the standard set forth above, the court first finds that the LMRA preempts, and the CBA's finality provision precludes, Harrison's third and sixth causes of action: breach of an implied covenant of good faith and fair dealing and failure to investigate.

Breach of an implied covenant of good faith and fair dealing is a tort designed to protect at-will employees with little job security, as opposed to unionized employees protected by a collective bargaining agreement. Jackson v Southern California Gas Co, 881 F2d 638, 644-45 (9th Cir 1989). As a result, the Ninth Circuit has consistently held that an implied covenant claim is "preempted by section 301 when the employee has comparable job security under a collective bargaining agreement." Id; see also Audette v International Longshoremen's & Warehousemen's Union, Local 24, 195 F3d 1107, 1112 (9th Cir 1999); Schlacter-Jones v General Tel of Cal, 936 F2d 435, 440 (9th Cir 1991); Cook v Lindsay Olive Growers, 911 F2d 233, 238-39 (9th Cir 1990). Harrison was a union employee covered by the CBA, which provided job security by preventing termination except for just cause. CBA at Art 1. Accordingly, Harrison's implied covenant claim is preempted by the LMRA and precluded by the finality provision in the CBA.

Harrison's claim for "failure to investigate" is likewise preempted by the LMRA and precluded by the CBA's finality provision. Harrison has not identified, and the court has not found, an independent California cause of action for failing to "exercise due care in investigating and substantiating allegations, if any existed that [an individual] was an inadequate employee."

7

1  Complaint ¶ 30.  The court therefore concludes that Harrison's
2  "failure to investigate" claim arises not from state law but from
3  the CBA provision that Comcast must conduct a "thorough
4  investigation of all facts and circumstances leading up to and/or
5  resulting in an employee's * * * discharge."  CBA at Art 10B.
6  Because the court cannot rule on this claim without interpreting
7  and applying this CBA provision, Harrison's sixth cause of action
8  is preempted by the LMRA and precluded by the CBA's finality
9  provision.

C

12  Harrison's first and second claims — breach of an implied
13  contract not to terminate except for cause and breach of an oral
14  contract not to terminate except for cause — fail to identify
15  whether they rely on the CBA or on an implied or oral contract
16  between Harrison and Comcast.  To the extent they rely on the CBA
17  provision that employees can be terminated only for cause, they are
18  preempted by the LMRA and precluded by the finality provision of
19  CBA.  Perdue decl, Ex 1 at Art 10A.
20  Harrison could avoid preemption on these claims if he
21  provided evidence, other than the CBA, of an implied or oral
22  contract between him and Comcast.  But Harrison fails to allege any
23  relevant factors in support of his implied contract claim, such as
24  "the personnel policies or practices of [Comcast], [Harrison's]
25  longevity of service, actions or communications by [Comcast]
26  reflecting assurances of continued employment, and the practices of
27  the industry in which [Comcast] is engaged." **Foley v Interactive**
28  **Data Corp**, 47 Cal 3d 654, 680 (1988) (citing **Pugh v See's Candies,**

United States District Court
For the Northern District of California

1 Inc, 116 Cal App 3d 311, 327 (1981)).  Nor has Harrison alleged any
2 "explicit words by which the parties agreed that he would not be
3 terminated without good cause" to support his oral contract claim.
4 Id at 675.
5    Comcast has borne its burden at the summary judgment
6 stage by appropriately pointing out the lack of evidence in the
7 record supporting Harrison's first two claims.  Doc #21 at 16, 18;
8 Celotex, 477 US at 325 (1986) (holding that the burden on a party
9 moving for summary judgment may be discharged by "'showing' -- that
10 is, pointing out to the district court -- that there is an absence
11 of evidence to support the nonmoving party's case").  Because
12 Harrison has failed to put forward any evidence supporting his
13 implied contract and oral contract claims, summary judgment for
14 Comcast is appropriate.

16                                  D
17    Harrison's fourth claim alleges that Comcast terminated
18 him in violation of public policy.  Under California law, to
19 establish a prima facie case of wrongful discharge in violation of
20 public policy, a plaintiff must prove that "his dismissal violated
21 a policy that is (1) fundamental, (2) beneficial for the public,
22 and (3) embodied in a statute or constitutional provision."  Turner
23 v Anheuser-Busch, Inc, 7 Cal 4th 1238, 1256 (1994) (internal
24 citation omitted).  None of these issues requires interpreting the
25 CBA.  Accordingly, the court is able to rely on state law to rule
26 on this claim.
27 //
28 //

United States District Court
For the Northern District of California

1

As a matter of state law, Harrison's claim of termination in violation of public policy does not raise a genuine factual dispute. A plaintiff's claim of wrongful discharge in violation of public policy "largely unaccompanied by citations to specific statutory or constitutional provisions, puts * * * the court in the position of having to guess at the nature of the public policies involved, if any. This kind of showing is plainly insufficient to create an issue of *material* fact justifying a trial on the merits." (emphasis original). Turner, 7 Cal 4th at 1257; see also Green v Ralee Engineering Co, 19 Cal 4th 66, 83 (1998); Green v Par Pools, Inc, 111 Cal App 4th 620, 633 (2003).

Harrison was represented by counsel when his complaint was filed. And yet his complaint does not identify any specific statutory or constitutional provision that would be undermined by his termination. Although Harrison alleges that his termination is against "the public policy prohibiting retaliatory termination for exercising an employee's legal rights," he fails to identify what those legal rights are. Complaint ¶ 22. Under Turner, this allegation is not sufficient to raise a genuine factual dispute. 7 Cal 4th at 1257.

Notwithstanding the complaint's deficiencies, Harrison elsewhere appears to argue that he was discharged because of his race. The complaint Harrison filed with the DFEH alleged that he was terminated one day after he complained of race discrimination. Jud Notice, Ex 47 (DFEH Complaint). Moreover, in the complaint before this court, Harrison alleges he received verbal threats in response to a remark he made regarding race discrimination.

10

1 Complaint ¶4.  When deposed, Harrison said he could not recall
2 making such a remark, but did insist that he had been terminated
3 because of his race.  Doc #24, Koepf decl, Ex 34 at 95-96.
4 　　　　　California's public policy clearly prohibits workplace
5 discrimination based on race.  See Cal Govt Code § 12920.  Yet,
6 even if Harrison is assumed to have alleged racial discrimination
7 as a basis of his violation of public policy claim, he fails to
8 provide any factual support for this claim.  Comcast again directs
9 the court's attention to the lack of support for Harrison's
10 discriminatory discharge claim.  Doc #21 at 19.
11 　　　　　Further, Comcast offers an alternative explanation for
12 Harrison's termination:  he was habitually irresponsible.  This
13 basis for termination is supported by Harrison's colorful history
14 of misconduct and discipline.  Perdue Decl, Ex 2-21.  The record
15 indicates, and Harrison does not dispute, that during his tenure
16 with Comcast, Harrison lost a number of company-issued tools.  As a
17 result, Comcast warned and disciplined Harrison on a number of
18 occasions — at least twelve verbal and written warnings and two
19 suspensions.  Doc #25, Escalante Decl ¶4.  But the last straw for
20 Harrison came when he left expensive electronic equipment
21 unattended in an unsecured parking lot overnight.  Id, Ex 17.
22 Although Harrison implies that he was not responsible, Comcast
23 provides evidence undisputed by any evidence Harrison presents to
24 the contrary.  Comcast has established that (1) Harrison regularly
25 used the equipment, Escalante Decl ¶7, (2) the equipment was found
26 "near company vehicles assigned to Harrison" and another employee,
27 Id ¶8, and (3) the serial numbers of the equipment matched the
28 "serial numbers on the items that previously had been assigned to

11

1 Harrison," Id ¶11. Moreover, Comcast has provided the court with
2 time-stamped frames from the security camera where Harrison worked.
3 Doc #22, Ex 33. These images show Harrison taking the equipment
4 out of the warehouse on the day in question, and then returning
5 empty-handed. Id.
6       Harrison does not contest this laundry list of misconduct
7 except to say that a "[f]raud was intentionally perpetrated" on
8 him. Doc #35 at 3. To support this theory, Harrison points to the
9 time stamps from the security camera, which are one hour earlier
10 than Harrison's scheduled work day. Id. But, as Comcast explained
11 in its opening brief, this error was due to daylight savings time –
12 an explanation the court finds undisputed by Harrison's puzzling
13 theory of fraud. Doc #21 at 7 n2.
14       Accordingly, because Harrison fails to provide any
15 evidence that he was terminated because of his race, his claim for
16 violation of public policy does not raise a genuine factual
17 dispute.

19       2
20       For Harrison's fifth claim, retaliation, the cause of
21 action is provided under Title VII of the Civil Rights Act of 1964,
22 as amended (Title VII), 42 USCS § 2000e et seq, or under the FEHA,
23 Cal Gov Code § 12900 et seq. To establish a prima facie case of
24 retaliation under either statute, a plaintiff must show (1) that he
25 engaged in an activity protected by the statute, (2) that he was
26 thereafter subjected to adverse employment action by his employer,
27 and (3) that there was a causal link between the two. <u>Hernandez v</u>
28 <u>Spacelabs Med, Inc</u>, 343 F3d 1107 (9th Cir 2003); <u>Soldinger v</u>

12

1  <u>Northwest Airlines, Inc</u>, 51 Cal App 4th 345 (1996). To resolve
2  this claim, the court need not interpret the CBA. Hence,
3  Harrison's retaliation claim is not preempted by the LMRA.
4      Yet Harrison's retaliation claim raises no genuine
5  factual dispute, whether based on Title VII or the FEHA. Title VII
6  provides that a plaintiff who has already filed a complaint with a
7  state agency can pursue his federal retaliation claim under Title
8  VII by filing a complaint with the Equal Employment Opportunity
9  Commission (EEOC) within three-hundred days of the alleged
10 discriminatory act. 42 USC § 2000e-5(e)(1). But Harrison does not
11 allege, and the record does not indicate, that he filed a complaint
12 with the EEOC at all, let alone within the strict time requirement.
13 Hence, Harrison's retaliation cannot arise under Title VII.
14     Harrison also cannot proceed under the FEHA because his
15 claim is untimely. The FEHA provides that a plaintiff must bring a
16 suit within one year from the date on which the DFEH issues a
17 right-to-sue notice. Cal Gov Code § 12965(b). Harrison was issued
18 the right-to-sue notice on June 12, 2003. Jud Notice, Ex 48. Yet
19 Harrison filed the current action on August 19, 2004, over one year
20 after his receipt of the right-to-sue notice from the DFEH.
21     The only way Harrison's retaliation claim can avoid being
22 time-barred is if the statute of limitations equitably tolled
23 during the pendency of Harrison's first action. But under
24 California's tolling rules, in the absence of a statute, the
25 limitations period is not equitably tolled during the pendency of a
26 case that is later dismissed without prejudice based on a
27 plaintiff's failure to prosecute. <u>Wood v Elling Corp</u>, 20 Cal 3d
28 353, 359 (1977) (citing 51 <u>Am Jur 2d</u>, Limitation of Actions, § 311

13

at 813); see also <u>Thomas v Gilliland</u>, 95 Cal App 4th 427, 433 (2002). The court dismissed Harrison's first action because Harrison had failed to appear at the scheduled case management conference and had failed to respond to this court's order to show the cause of the absence. Jud Notice, Ex 43. Because Harrison's first action was dismissed based on his failure to prosecute, equitable tolling does not apply to this case.

Harrison appears to attribute his failure to prosecute to his "horrible misfortune of retaining The Lawyer From Hell." Doc #35 at 6. But "attorney neglect does not satisfy the standard of reasonableness and special circumstances required by California's equitable tolling doctrine." <u>Bonifield v County of Nevada</u>, 94 Cal App 4th 298, 306 (2001). Accordingly, Harrison's state retaliation claim under the FEHA is time-barred.

### E

Finally, the court notes that Harrison's seventh "claim" for "specific performance" states a remedy, not a cause of action. See, e g, <u>Harara v ConocoPhillips Co</u>, 377 F Supp 2d 779, 796 (ND Cal 2005) ("Specific performance is a form of contractual relief, not an independent claim.") (citing 5 Witkin, <u>California Procedure</u>, <u>Pleading</u> § 740 (4th ed 1997)). Because summary judgment is appropriate on the other claims Harrison alleges, he retains no independent basis to obtain specific performance. Accordingly, summary judgment is also appropriate on this "claim."

//
//
//

**14**

//

IV

For the reasons stated above, the court GRANTS Comcast's motion for summary judgment. The clerk is DIRECTED to close the file and terminate all pending motions.

SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge